BLOOMFIELD EDUCATION ASSOCIATION *v.*
ROBERT A. FRAHM ET AL.
(12695)

LAVERY, FREEDMAN and SPEAR, Js.

Argued May 6—decision released August 9, 1994

*Ronald Cordilico,* for the appellant (plaintiff).

*Colleen M. Murphy,* commission counsel, with whom were *Ralph G. Elliot* and, on the brief *Mitchell W. Pearlman,* general counsel, for the appellees (defendants).

SPEAR, J. The plaintiff Bloomfield education association (BEA) appeals from the judgment affirming the order of the freedom of information commission (FOIC) requiring the Bloomfield superintendent of schools to provide the defendants[1] Robert A. Frahm and the Hartford Courant with copies of grievances filed under a teachers' employment contract. The issue on appeal is whether the filing of a grievance under a collective bargaining agreement constitutes a "record, report or statement of strategy or negotiations" and is therefore exempt from disclosure under General Statutes § 1-19 (b) (9).[2] We conclude that such a grievance is not exempt and affirm the judgment of the trial court.

The trial court found the following facts. On December 12, 1991, Frahm and the Hartford Courant requested

---

[1] The defendants in this action are Robert A. Frahm, the Hartford Courant and the FOIC.

[2] General Statutes § 1-19 (b) provides in pertinent part: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (9) records, reports and statements of strategy or negotiations with respect to collective bargaining . . . ."

that the Bloomfield superintendent of schools forward copies of the applicable teachers' employment contract as well as copies of all grievances filed alleging violations of such contract, except those grievances that pertained to teacher performance or evaluation.[3] On December 30, 1991, the superintendent provided a copy of the contract but notified the defendants that he would not forward the requested grievances unless the BEA consented.

On January 22, 1992,[4] Frahm and the Hartford Courant filed a complaint with the FOIC protesting the superintendent's denial of access to the requested grievances. An FOIC hearing officer granted the BEA party status and heard the matter as a contested case on July 27, 1992. The FOIC adopted the hearing officer's report and rendered a final decision on November 23, 1992, ordering the superintendent to provide copies of the requested grievances to Frahm and the Hartford Courant. The FOIC found that the BEA had failed to prove that the requested grievances were exempt from disclosure pursuant to General Statutes § 1-19 (b) (9).[5]

The BEA appealed to the trial court, which upheld the FOIC's determination that the requested grievances contained neither strategy nor negotiations with respect to collective bargaining. This appeal ensued. Judicial review of an appeal from the decision of an administrative agency is governed by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; "and the scope of that review is very restricted." *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988).

---

[3] Grievances dealing with teacher performance or personnel evaluations were not requested as they are protected from disclosure pursuant to General Statutes § 10-151c.

[4] The trial court stated that the complaint was filed on January 17, 1992, however, the FOIC hearing officer found that the complaint was dated January 17, 1992, and filed on January 22, 1992.

[5] See footnote 2.

General Statutes § 4-183 (j) permits modification or reversal of an agency's decision only if "substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or *statutory* provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." (Emphasis added.)

In this appeal, we are asked to review the FOIC's interpretation of the Freedom of Information Act. In accordance with judicial precedent, we will "give great deference to the construction given a statute by the agency charged with its enforcement." *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 263, 579 A.2d 505 (1990); *Crochiere* v. *Board of Education,* 227 Conn. 333, 354, 630 A.2d 1027 (1993); *Police Dept.* v. *State Board of Labor Relations,* 225 Conn. 297, 300, 622 A.2d 1005 (1993); *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978); *Borent* v. *State,* 33 Conn. App. 495, 499, 636 A.2d 392 (1994).

We have not previously decided whether a grievance is a record, report, or statement of strategy or negotiations under § 1-19 (b) (9). In *Lieberman* v. *State Board of Labor Relations,* supra, 216 Conn. 253, our Supreme Court rejected essentially the same argument that the BEA advocates in this case. The court decided in *Lieberman* that an employee's personnel file did not constitute a record of strategy or negotiations. The court reasoned that "while the information contained within an employee's personnel file may be the subject of bargaining, the subject standing alone reveals nothing

about the strategy or negotiation involved in the collective bargaining process." Id., 266–67 n.10.

That reasoning also applies to grievance complaints. Although grievances may be the subject of collective bargaining, the mere filing of a grievance, standing alone, and containing limited information[6] does not reveal any strategy or negotiations involved in the collective bargaining process. Section 1-19 (b) (9) does not exempt every record pertaining to collective bargaining from disclosure, only those that reveal strategy or negotiations.

The BEA cites the FOIC case of *Radford* v. *Trumbull,* Docket No. FIC 70-189 (May 20, 1980), for the proposition that documents that are part of the collective bargaining process are exempt from disclosure under § 1-19 (b) (9). In *Radford,* the FOIC held that preliminary considerations exchanged by the board of education and the teachers union at the onset of negotiations contained strategy and were therefore exempt. The exchange of preliminary considerations is distinguishable from the filing of a grievance. Preliminary considerations embody the negotiating posture of each side at the onset of negotiations, whereas the filing of a grievance is meant to convey only the preliminary information necessary to initiate the resolution process and involves no discussion regarding the proposed settlement of the complaint.

The FOIC decision to exclude the requested grievances from § 1-19 (b) (9) comports with the underlying policy of the Freedom of Information Act.[7] That act

---

[6] The FOIC found that the grievances sought by the defendant contained the following information: the grievants' names, the names of the persons against whom the grievances were filed, the nature of the complaints, a reference to the contract sections at issue, and the working conditions, if any, complained of.

[7] General Statutes § 1-19 (a) provides in pertinent part: "Except as otherwise provided by any federal law or statute, all records maintained or kept

"expresses a strong legislative policy in favor of the open conduct of government and free public access to its records." *Lieberman* v. *State Board of Labor Relations,* supra, 216 Conn. 266; *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328, 435 A.2d 353 (1980). The legislature in passing the Freedom of Information Act and the courts in interpreting the act have recognized that the right to disclosure is not absolute. Specific statutory exemptions have been provided. See *Lieberman* v. *State Board of Labor Relations,* supra, 266; *Wilson* v. *Freedom of Information Commission,* supra, 328; see also General Statutes § 1-19 (b). The courts have invariably held that these "exceptions must be narrowly construed." *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d 1209 (1984); *Wilson* v. *Freedom of Information Commission,* supra, 328.

We conclude that the legislature, by inserting the terms "strategy" and "negotiations," intended to qualify the § 1-19 (b) (9) exemption. Had the legislature meant to exempt *all* records, reports, and statements with respect to collective bargaining, then it would not have included the words "strategy" and "negotiations." "There is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is treated as insignificant and unnecessary." *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 407, 528 A.2d 805 (1987); *Peck* v. *Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980). If we were to adopt the BEA's position that *all* records with

on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . ."

respect to collective bargaining are exempt, we would render the words strategy and negotiations superfluous. The trial court engaged in a thorough evaluation of the plain meaning of the words strategy and negotiations. Strategy is defined as "a careful plan or method" and "the art of devising or employing plans or stratagems toward a goal." Webster's Third New International Dictionary. From this definition, the trial court properly decided that the filed grievances did not fall within the plain meaning of strategy as they did not convey information regarding tactics to anyone.

Likewise, the trial court concluded that the filed grievances did not fall within the plain meaning of negotiations. The definition of negotiations as expounded in *International Plastics Development, Inc.* v. *Monsanto Co.,* 433 S.W.2d 291, 296 (Mo. 1968), supports the contention that a filed grievance is not a negotiation. In *International Plastics Development, Inc.* v. *Monsanto Co.,* supra, 296, the Missouri Supreme Court stated: "Negotiations is a broad term, not in all connotations a term of art, but in general it means the deliberation which takes place between the parties touching a *proposed agreement* . . . the deliberation, discussion, or conference on the terms of a *proposed agreement;* a treating with another with a view to coming to terms . . . . Negotiations look to the future, and are preliminary discussions; the preliminaries of a business transaction." (Citations omitted; emphasis added; internal quotation marks omitted.)

A key element of negotiations is the existence of an offer of possible settlement. In decisions concerning labor disputes, courts have described negotiations as the "process of submission and consideration of *offers* until an acceptable offer is made, and accepted . . . ." (Emphasis added.) *Gainey* v. *Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees,* 275 F. Sup. 292, 300 (D.C. Pa. 1967); *United States* v. *John McShain, Inc.,* 258 F.2d 422, 424

(D.C. Cir.), cert. denied, 358 U.S. 832, 79 S. Ct. 52, 3 L. Ed. 2d 70 (1958); *Hanover Shoe, Inc.* v. *United Shoe Mfg. Corp.,* 245 F. Sup. 258, 288 (D. Pa. 1965); *United Consumers Club* v. *Griffin,* 85 Ohio App. 3d 210, 619 N.E.2d 489 (1993). The filing of a grievance merely describes the particulars of the complaint, it does not discuss a proposed settlement and therefore does not contain negotiations. In another labor dispute case, the court held that the making of an oral complaint is not in itself negotiations. See *Rutland Railway Corp.* v. *Brotherhood of Locomotive Engineers,* 188 F. Sup. 721, 726 (D. Vt. 1960), rev'd on other grounds, 307 F.2d 21 (1st Cir. 1962), cert. denied, 372 U.S. 954, 83 S. Ct. 949, 9 L. Ed. 2d 978 (1963). These decisions in analogous labor dispute cases support our conclusion that the filing of a grievance does not fall within the generally recognized definition of negotiations.

The plaintiff's construction of § 1-19 (b) (9) is not supported by either the statutory language or the underlying policy of the Freedom of Information Act. We conclude, therefore, that the trial court correctly found that the FOIC properly excluded the requested grievances from exemption and ordered their disclosure.

The judgment is affirmed.

In this opinion the other judges concurred.