[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals a decision of the defendant Freedom of Information Commission (FOIC) ordering the defendant East Lyme board of education (board) to provide an unredacted copy of a grievance document to the defendants Karen Florin and The Day and to strictly comply with General Statutes §§ 1-15 (a) and 1-19
(a). Florin is a reporter for The Day, a daily newspaper published in New London. The plaintiff association is the bargaining representative for teachers in East Lyme under their collective bargaining agreement. The FOIC granted the plaintiff party status at the hearing.
Before turning to the merits of this appeal, the court addresses the issue of aggrievement. No defendant has raised this as an issue. Aggrievement is, however, a jurisdictional prerequisite for an administrative appeal. State Library v.Freedom of Information Commission. 240 Conn. 824, 831 (1997). After a review of the record and taking into account the party status of the plaintiff in the proceedings below, the court finds that the plaintiff is an aggrieved party within the meaning of General Statutes § 1-21i(d). As the representative under the collective bargaining agreement involved here, the plaintiff has a specific personal and legal interest in the subject matter of the FOIC decision and that decision has had a special and injurious effect on this interest. (Return of Record (ROR), Item 11, p. 2); State Library v. Freedom of Information Commission
supra, 240 Conn. 833.
The record reflects the following facts. On July 16, 1996, Florin wrote to the board requesting "a copy of the grievance to be discussed by the board on July 16, 1996. (ROR, Item 6.) By letter dated July 25, 1996, the superintendent of East Lyme Public Schools denied Florin's request, saying that "materials and records relative to this grievance are, at this time, not public documents and are protected under collective bargaining provisions of Connecticut General Statutes." (ROR, Item 7.) On July 29, 1996, Florin filed a complaint with the FOIC claiming that the board failed to provide The Day with the teacher grievance. She requested that the board provide "all information pertaining to the teacher grievance." (ROR, Item 1.) At the January 8, 1997 hearing before the FOIC hearing officer, the board provided Florin with a redacted copy of the grievance procedure form. (ROR, Item 10; Item 11, pp. 7-9.) Florin claimed that she was entitled to an unredacted copy of the grievance procedure form, and the board and the plaintiff disagreed. The redacted copy contained the grievant's statement; the unredacted CT Page 7584 copy included the principal's response to the statement. The hearing officer issued a proposed final decision that was adopted by the FOIC on June 11, 1997, which concluded that the board violated §§ 1-15 (a) and 1-19 (a) by failing to promptly provide an unredacted copy of the requested grievance to Florin and The Day. (ROR, Item 13, p. 3.)
In this appeal from that decision, the plaintiff argues first that the decision is clearly erroneous because it goes beyond Florin's initial request of the board. It further argues that the decision is contrary to case law.
The plaintiff claims that because Florin requested simply a copy of the grievance, the FOIC was limited to ordering production of the grievant's statement. The pertinent findings in the decision read
 7. It is found that the record at issue is "a grievance procedure form," which in addition to the grievant's statement, contains four other sections entitled: level one response, or principal's statement; level two response or superintendent's statement; level three response or respondent's statement; and level four response or ELTA consideration of appeal to an arbitration panel.
 8. It is also found that the entire subject grievance procedure form, as completed at the time of the complainants' request, is the record requested by the complainant because it was the subject of the discussion by the respondent on July 16, 1996.
 9. It is further found that at the time of the complainants' request, the subject grievance procedure form contained the grievant's statement and the level one response or principal's statement.
(ROR, Item 13, p. 2.)
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its, own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations omitted; internal quotation marks omitted.) Dolgner v. Alander, 237 Conn. 272, 280
(1996). This court "must decide, in view of all of the evidence, CT Page 7585 whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v.Freedom of Information Commission, [221 Conn. 393, 397 (1992)]. Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Internal quotation marks omitted.) Perkins v. Freedom of Information Commission,228 Conn. 158, 164-65 (1993).
Notwithstanding the language of Perkins, however, the Supreme Court has recently stated that the deferential standard does not apply to a court's review of an "agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review."Connecticut Light Power Co. v. Texas-Ohio Power, Inc.,243 Conn. 635, 644 (1998).
Under the scope of review allowed this court, it will not disturb the findings of fact as to the first issue. There is substantial evidence in the record to support them. Further, the plaintiff has cited no authority to support its position that the wording of the initial request so limits the FOIC's power to fashion an order. In fact, there is authority to support a broad reading of freedom of information requests. In Perkins v. Freedomof Information Commission, 228 Conn. 158, 166-67 (1993), our Supreme Court noted that, as to interpreting what constitutes a FOI request, courts must defer to the exercise of administrative judgment. It then noted the policy favoring disclosure in this context:
 As a practical matter, the FOIA is used repeatedly by members of the public who are unschooled in technical, legalistic language distinctions. It would be unreasonable to deny a member of the public access to the FOIA simply because of arguable imperfections in the form in which a request for public records is couched.
Id., 167. The court will not overturn the FOIC on this ground.
The plaintiff next claims that the FOIC's conclusion that the CT Page 7586 requested grievance form was not exempt under General Statutes § 1-19 (b)(9) is contrary to the law. That statutory provision reads,
 Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21
to 1-21k, inclusive, shall be construed to require disclosure of. . . (9) records, reports and statements of strategy or negotiations with respect to collective bargaining. . . .
The conclusion in the FOIC on this issue was as follows:
 15. It is found that the requested grievance in this case does not constitute negotiations with respect to collective bargaining within the meaning of § 1-19 (b)(9), G.S.
 16. It is therefore concluded that the requested grievance is not, exempt from disclosure pursuant to § 1-19 (b)(9).
(ROR, Item 13, p. 3.)
The Appellate Court has interpreted General Statutes § 1-19 (b)(9) in a similar context. In Bloomfield Education Assn. v.Frahm, 35 Conn. App. 384, cert denied, 231 Conn. 926 (1994), the court considered whether grievances filed pursuant to a collective bargaining contract were exempt under General Statutes § 1-19
(b)(9). In holding that they were not exempt, the court explained,
 We conclude that the legislature, by inserting the terms "strategy" and "negotiations," intended to qualify the § 1-19 (b)(9) exemption. Had the legislature meant to exempt all records, reports, and statements with respect to collective bargaining, then it would not have included the word"strategy" and "negotiations." "There is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is treated as insignificant and unnecessary." Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 407, 528 A.2d 805 (1987); Peck v. Jacquemin 196 Conn. 53, 66, 491 A.2d 1043 (1985); Connecticut Light Power Co. v. Costle, 179 Conn. 415, 422, 426 A.2d 1324 (1980). If we were to adopt the BEA's position that all records with respect to collective bargaining are exempt, we would render the words strategy and negotiations superfluous. The trial court engaged in a thorough evaluation of the plain meaning of the words strategy and negotiations. Strategy is defined as "a careful plan or method" and "the art of CT Page 7587 devising or employing plans or stratagems toward a goal." Webster's Third New International Dictionary. From this definition, the trial court properly decided that the filed grievances did not fall within the plain meaning of strategy as they did not convey information regarding tactics to anyone.
35 Conn. App. at 389-90. Subsequent to that decision, the Supreme Court interpreted the analogous statutory provision as to public meetings, General Statutes § 1-18a(b),[1] in GlastonburyEducation Assn. v. Freedom of Information, 234 Conn. 704, 711-13
(1995) and Waterbury Teachers Assn. v. Freedom of InformationCommission, 240 Conn. 835 (1997). In the Glastonbury
decision, the Supreme Court found that parts of binding arbitration proceedings are closed to the public under § 1-18a(b). In its interpretation of that provision the court referred to the legislative policy of favoring disclosure and concluded as follows:
 In light of these principles, the statutory definition of public meetings contained in § 1-18a (b) must be read to limit rather than to expand the opportunities for public agencies to hold closed hearings. Accordingly, the language providing that public meetings "shall not include . . . strategy or negotiations with respect to collective bargaining" means, as the FOIC maintains, that what is excluded from the term "meeting" is not all collective bargaining, but only "strategy or negotiations" sessions that relate to collective bargaining. This interpretation accords proper respect for the manifest legislative policy expressed in the FOIA. It also comports with its legislative history, which suggests that the collective bargaining exception was understood to provide privacy for "the give-and-take in negotiating sessions of collective bargaining. . . . " (Emphasis added.) 18 H.R. Proc., supra, p. 3896. Had the legislature intended a broader exclusion, it could have excluded "collective bargaining" without limitation, or it could have excluded "collective bargaining, including but not limited to strategy and negotiations relating thereto." See Bloomfield Education Assn. v. Frahm, 35 Conn. App. 384, 389, 646 A.2d 247, cert. denied, 231 Conn. 926, 648 A.2d 161 (1994). It chose neither of these options.
Glastonbury Education Assn. v. Freedom of Information, supra,234 Conn. 712-13. The Waterbury Teachers decision continued along that path by holding that grievance hearings should be bifurcated CT Page 7588 to allow public access to the presentation of evidence of the underlying facts but not to the negotiations or settlement discussions.
In this case, the part of the document at issue contains the school principal's response to the grievant's statement. While the FOIC did not review that response in camera during the proceedings below, this court has done so pursuant to General Statutes 1-21i(d). The response cannot be characterized as a negotiation for settlement or tactical purposes. It is an informational response. Bloomfield Education Assn. V. Frahm,
supra, 35 Conn. App. 388.
The FOIC's determination that the unredacted document is not exempt under § 1-19 (b)(9) is supported by the law. The unredacted document does not contain strategy or negotiations with respect to collective bargaining. Further, as noted earlier, the purpose behind the FOIA is to promote the policy favoring open conduct of government and free public access to government records. Accordingly, the court's construction of the FOIA "must be guided by the policy favoring disclosure, and exceptions to disclosure must be narrowly construed." Superintendent of Policev. Freedom of Information Commission, 222 Conn. 621, 626 (1992). The burden of proving the applicability of the exception rests with the party claiming the exception. Wilson v. Freedom ofInformation, 181 Conn. 324, 239 (1980). The plaintiff has not met its burden. Accordingly, this court will not disturb the conclusion of the FOIC.
The appeal is dismissed.
DiPentima, J.