This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} A, Summit County Children's Services Board ("CSB"), appeals from the decision of the Summit County Court of Common Pleas. We affirm.
{¶ 2} CSB is a county agency that provides care for abused and neglected children. Communication Workers of America Local #4546 ("the Union") represents CSB employees. The Union brought two grievances on behalf of former employees of CSB seeking payment of a retroactive pay raise. The grievances were consolidated by agreement of the parties and proceeded to a hearing before an arbitrator. The Arbitrator issued an opinion and award sustaining the grievances on January 7, 2002. CSB brought an application to vacate the Arbitrator's award in the Summit County Court of Common Pleas. The trial court denied CSB's application. It is from this denial that CSB appeals.
 First Assignment of Error
{¶ 3} "THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD FOR A LACK OF SUBJECT MATTER JURISDICTION."
{¶ 4} In its first assignment of error, CSB asserts that the trial court erred in failing to vacate the Arbitrator's award because the Arbitrator lacked subject matter jurisdiction. We disagree.
{¶ 5} This case arises from two collective bargaining agreements between CSB and the Union covering the periods of April 1, 1997 to March 31, 2000, and April 1, 2000 to March 31, 2003. In both instances, the collective bargaining agreements were not ratified until after the previous agreements had expired. On July 22, 1997, the Union and CSB ratified the collective bargaining agreement covering the period of April 1, 1997 to March 31, 2000. On May 22, 2001, the Union and CSB ratified the collective bargaining agreement covering the period of April 1, 2000, to March 31, 2003. During the time between the expiration of the old collective bargaining agreements and the signing of the new collective bargaining agreements, the parties agreed to continue under the old collective bargaining agreement. The parties signed ground rules agreements to govern the negotiating period for both collective bargaining agreements. Both ground rules agreements stated that wage and fringe benefits agreed to in the eventual agreement "shall be applied retroactively to April 1[.]"
{¶ 6} The new collective bargaining agreements each provided for wage increases that were "effective for a three year period beginning April 1, 1997" and "effective for the three-year period beginning April 1, 2000." CSB issued pay raises, retroactive to April 1 of the pertinent year, to its employees who were employed when the collective bargaining agreements were ratified. CSB did not issue retroactive pay raises to employees who were employed on the respective April 1 dates, but who left employment before the collective bargaining agreements were ratified.
{¶ 7} On October 1, 1997, the Union brought a grievance on behalf of the former employees alleging that they were entitled to payment for the amount of wage increase for the time they worked after April 1, 1997, until they left the employment of CSB. On June 18, 2001, the Union brought a similar grievance on behalf of the former employees for the amount of wage increase for the time they worked after April 1, 2000, until they left the employment of CSB.
{¶ 8} Both grievances were submitted to arbitration. The Arbitrator awarded the retroactive pay increases to those CSB employees who worked after the effective date of each agreement, but who did not receive a retroactive pay increase.
{¶ 9} R.C. 2711.10 provides in pertinent part:
{¶ 10} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
{¶ 11} "***
{¶ 12} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
{¶ 13} The Ohio Supreme Court discussed an appellate court's review of an arbitrator's award in Findlay City School Dist. Bd. of Edn.v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129. The Supreme Court held:
{¶ 14} "1. Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited.
{¶ 15} "2. Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." Id. at paragraphs one and two of the syllabus. See, also,Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc. (1990),52 Ohio St.3d 174, 176.
{¶ 16} This Court has previously held that:
{¶ 17} "`[An] arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" Summit Cty. Bd. of MentalRetardation Developmental Disabilities v. Am. Fedn. Of State, Cty. Mun. Emp. (1988), 39 Ohio App.3d 175, 176, quoting UnitedPaperworkers Internatl. Union, AFL-CIO v. Misco, Inc. (1987), 484 U.S. 29,38, 98 L.Ed.2d 286, 298.
{¶ 18} In support of its argument that the Arbitrator lacked subject matter jurisdiction, CSB argues that neither the former employees, nor the Union, had standing to file grievances on behalf of the former employees. Section 504.03 of the collective bargaining agreements states that "[a] grievance may be brought by any member of the Bargaining Unit." Section 103.01 of the collective bargaining agreements defines "bargaining unit" as "a single unit composed of the individual employees established and identified as being included in the Bargaining Unit pursuant to Article 102 of this Agreement." CSB argues that, because the grievances were filed after the former employees left CSB's employment, the former employees are no longer bargaining unit members. Therefore, they do not have standing to file a grievance under the collective bargaining agreement.
{¶ 19} "`[F]or the purposes of collective bargaining agreements ***, the relevant time that a person need be an employee is the time the incident in question occurred.'" Independence Fire Fighters Assoc. v.City of Independence (1997), 121 Ohio App.3d 716, 721, quoting, Fenskev. City of Brook Park (Feb. 3, 1994), 8th Dist. No. 64525. CSB argues that the "incident" in this case took place after the former employees left CSB's employment. However, the Arbitrator found that:
{¶ 20} "The grievance is based on the contention that entitlement under the collective bargaining agreement relates back to the time when the individuals had the status of bargaining unit employees, and it therefore arises out of the relationship, and out of the collective bargaining agreement."
{¶ 21} Thus, the Arbitrator found that the former employees were employees at the relevant time and had standing to file grievances. The Arbitrator's award drew its essence from the collective bargaining agreement. This Court cannot say that the Arbitrator's finding that he possessed subject matter jurisdiction was unlawful, arbitrary or capricious.
{¶ 22} CSB's first assignment of error is overruled.
 Second Assignment of Error
{¶ 23} "THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD ON THE GROUNDS THAT THE ARBITRATOR'S AWARD CONFLICTED WITH THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE COLLECTIVE BARGAINING AGREEMENT."
{¶ 24} In its second assignment of error, CSB asserts that the trial court erred in failing to vacate the arbitrator's award on the grounds that the Arbitrator's decision to allow the Union to file grievances on behalf of former employees conflicted with the clear and unambiguous language of the collective bargaining agreement. We disagree.
{¶ 25} The standard of review is stated under the first assignment of error.
{¶ 26} Section 504.02 of the collective bargaining agreements defines "grievance" as "an allegation that there has been a breach, misinterpretation, or improper application of this Agreement." Both collective bargaining agreements state that a grievance may be brought by any member of the bargaining unit. A grievance may proceed as an individual grievance, a group grievance, or as a "Union" grievance. A "Union" grievance may be brought pursuant to section 504.09 of the collective bargaining agreements. Section 504.09 states that "[a] grievance regarding issue(s) affecting the entire Bargaining Unit may, with the consent of the parties, be commenced at Step 3 of the Grievance Procedure."
{¶ 27} In the present case, the grievances were filed by the "Union" at step 3 of the grievance procedure. The grievance was signed by Chief Steward Jean Heineman and President Robin Schenault. The Arbitrator found that there is no requirement that the alleged breach have any effect on the person filing the grievance, nor that the affected individuals must authorize the filing of the grievance. The Arbitrator thus concluded that the collective bargaining agreements permitted one employee to file a grievance on behalf of another employee.
{¶ 28} The Arbitrator found that this case was appropriately brought as a "Union" grievance because section 504.09 "does not limit `Union' grievances to situations immediately affecting the entire bargaining unit, but authorizes them where the `issue(s)' affect the entire unit." The Arbitrator found that the issues of this case could potentially affect every CSB employee. In addition, the Arbitrator found that the parties agreed to treat these grievances as "Union" grievances.
{¶ 29} The Arbitrator's award drew its essence from the collective bargaining agreement. This Court cannot say that the Arbitrator's finding that the Union may bring a grievance on behalf of the employees who were employed on April 1, 1997 and April 1, 2000, was unlawful, arbitrary or capricious.
{¶ 30} CSB's second assignment of error is overruled.
 Third Assignment of Error
{¶ 31} "THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD ON THE GROUNDS THAT THE ARBITRATOR COULD NOT AWARD CONTRACTUAL BENEFITS TO PERSONS WHO WERE NOT PARTIES TO THE CONTRACT."
{¶ 32} In its third assignment of error, CSB asserts that the trial court erred in failing to vacate the Arbitrator's award on the grounds that the Arbitrator could not award contractual benefits to persons who were not parties to the contract. We disagree.
{¶ 33} The standard of review is stated under the first assignment of error.
{¶ 34} CSB asserts that the Union, as a party to the collective bargaining agreements, could only enter into those contracts as a representative of the current employees at the time the contract was signed. CSB asserts that the employees who left employment after the respective April 1 dates were not represented when the Union signed the collective bargaining agreements and, therefore, were not parties to the collective bargaining agreements. CSB further asserts that because the former employees were not represented, they could not obtain benefits under the collective bargaining agreement.
{¶ 35} The Arbitrator stated in his decision that "the most natural interpretation of the phrase `Effective April 1' in an agreement that was concluded after April 1 is that the parties intended that the specified increase should be treated as if the contract had actually been signed on the effective date." The Arbitrator also pointed to the first sentence of each collective bargaining agreement which states "This Agreement is made and entered into this 1st day of April[.]"
{¶ 36} The Arbitrator's finding that the employees who worked after April 1 were entitled to retroactive wages drew its essence from the collective bargaining agreement. This Court cannot say that the Arbitrator's finding was unlawful, arbitrary or capricious.
{¶ 37} CSB's third assignment of error is overruled.
{¶ 38} CSB's assignments of error are overruled. The decision of the Summit County Court of Common Pleas is affirmed.
BAIRD, P.J. CONCURS.
CARR, J. CONCURS IN JUDGMENT ONLY.